# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| DUSTIE REYNA, | Case No.: 1:13-cv-00111-REB |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| LOWE'S HIW, INC. and DOES 1 through 10, | **(Docket No. 52)** |
| Defendants. | |

Now pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 52). Having carefully reviewed the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. BACKGROUND

While pushing a shopping cart loaded with two bags of mortar, Plaintiff Dustie Reyna ("Reyna") claims that a front wheel caught a cracked portion of the concrete parking lot,[1] halting the cart's forward movement, and causing it to flip forward. Reyna alleges her momentum and the cart's momentum caused her to catatapult onto and over the shopping cart, until she landed face-down on the ground, suffering "serious personal injury" as a result. She brings this premises liability action against Defendant Lowe's HIW ("Lowe's"), the owner/operator of the parking lot.

---

[1] Reyna has variously described the condition of the parking lot where her accident occurred as a "drainage depression," "hole," "crack," "break," "grading issue," and/or "indentation." *Compare* First Am. Compl., ¶ 1, p. 3 (Docket No. 1, Att. 3), with Reyna Dep., 102:19-21, 103:2-7 106:19-107:3, attached as Ex. E to Bolinger Decl. (Docket No. 52, Att. 10). Any difference in her descriptions is not integral to the Court's resolution of the Motion for Summary Judgment.

**MEMORANDUM DECISION AND ORDER - 1**

Lowe's requests that the Court "grant summary judgment as to the entirety of Reyna's complaint and that her claim be dismissed with prejudice."  MSJ, p. 2 (Docket No. 52). Specifically, Lowe's argues that summary judgment is appropriate for two reasons: (1) "Lowe's had no duty to repair the approximately one and one half inch to two and one half inch (1 ½" to 2 ½") deep by two foot long (2') asphalt crevice because it was not reasonably foreseeable that such a minor defect in the parking lot would create a hazard; and (2) Reyna fails to meet her burden of demonstrating a causal connection between the shopping cart incident and her extensive alleged medical conditions because she has no supporting expert medical opinion testimony on the issue."  Mem. in Supp. of MSJ, p. 1 (Docket No. 52, Att. 2).

## II. DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources."  *Id*. at 327.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  There must be a genuine dispute as to a *material* fact – a fact "that may affect the outcome of the case."  *Id*. at 248.

**MEMORANDUM DECISION AND ORDER - 2**

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *See id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *See McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence, but may simply point out the absence of evidence to support the nonmoving party's case. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000). This then shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *See Devereaux*, 263 F.3d at 1076. The non-moving party must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex*, 477 U.S. at 324.

**B.    Lowe's is Not Entitled to Summary Judgment on Reyna's Premises Liability Claim**

Premises liability is a form of negligence and, in Idaho, the elements of a negligence claim are: "(1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Cumis Ins. Soc'y, Inc. v. Massey*, 155 Idaho 942, 947-48 (Idaho 2014). Lowe's motion focuses on the first and third of these elements – contending that it had no duty to repair the asphalt crevice allegedly contributing to Plaintiff's accident (the first element); and that Reyna cannot establish a causal

**MEMORANDUM DECISION AND ORDER - 3**

connection between the accident and her claimed injuries.  Questions of material fact, however,

preclude answering either of these questions entirely in Lowe's favor as a matter of law.

      1.    <u>Questions of Fact Exist as to Whether Lowe's Knew, or Should Have Known, of</u>
            <u>an Allegedly Dangerous Condition in its Parking Lot</u>

"The duty of a landowner to the person injured on the land turns on the status of the

injured person." *Peterson v. Romine*, 960 P.2d 1266, 1269 (Idaho 1998).  Here, Reyna was an

invitee of Lowe's.[2]  "[T]he landowner owes a duty to the invitee 'to warn of hidden or concealed

dangers and to keep the land in a reasonably safe condition.'" *Shea v. Kevic Corp.*, 328 P.3d 520,

528 (Idaho 2014) (quoting *Peterson*, 960 P.2d at 1269).  This means that, in the context of a

negligence/premises liability claim, an invitee must show that the landowner knew, or in the

exercise of reasonable care should have known, of the alleged dangerous condition.  *See Shea*,

328 P.3d at 528 (citing *All v. Smith's Mgmt. Corp.*, 708 P.2d 884, 886 (Idaho 1985)).

Reyna alleges that she "was not aware of the hazard as it was not clearly evident and

[Lowe's] had failed to inspect and repair the parking lot in a reasonable and timely fashion nor

warned Plaintiff, or others, of the hazard with any posted signage."  First. Am. Compl., ¶ 5, p. 3

(Docket No. 1, Att. 3).  Reyna goes on to claim that, "[a]s a direct and proximate result of

[Lowe's] failure to inspect the premises, and remedy the dangerous/defective condition, and/or

warn Plaintiff of the dangerous/defendant condition, Plaintiff suffered extreme mental anguish

and physical pain."  *Id*. at ¶ 10, p. 4.  Construing the record in the light most favorable to Reyna,

and drawing all reasonable inferences in Reyna's favor, the undersigned finds that a genuine

---

    [2]  "An invitee is one who enters upon the premises of another for a purpose connected with the business conducted on the land, or where it can reasonably be said that the visit may confer a business, commercial, monetary or other tangible benefit to the landowner." *Holzheimer v. Johannesen*, 871 P.2d 814, 817 (Idaho 1994).

**MEMORANDUM DECISION AND ORDER - 4**

issue of material fact exists as to whether Lowe's had knowledge, or had reason to know, of the allegedly dangerous condition.

Preliminarily, there is no evidence before the Court affirmatively establishing Lowe's actual or constructive knowledge of the particular area involved in Reyna's accident – that is, the allegedly dangerous condition of that specific portion of asphalt in the Lowe's parking lot bringing about Reyna's accident.  Reyna's mere claim of its existence (and after-the-fact photographs submitted into the record) is not enough in this respect.  *See Giles v. Montgomery Ward Co.*, 491 P.2d 1256, 1257 (Idaho 1971) (plaintiff's claim of negligence based on his allegation that there was something slippery which caused him to fall did not establish that defendant knew of condition, or that condition was of such nature that defendant, in exercising reasonable care for safety of its customers, should have been aware).  But such exacting evidence is not needed to establish Lowe's liability; instead, Reyna need only show that Lowe's had actual or constructive knowledge of the operating methods that would cause the dangerous condition contributing to Reyna's accident – in this case, deteriorating asphalt, owing to the presence of depressions, holes, cracks, breaks, grading issues, indentations, etc.  *See Shea*, 328 P.3d at 528-30 ("If Shea is able to establish that Kevic had knowledge that ice generally forms at the car wash on cold days, she does not need to prove that Kevic had knowledge of the specific ice buildup that caused her fall."); *All*, 708 P.2d at 887 ("Therefore, it was unnecessary for Mrs. All to show that Shelby's and Smith's had actual or constructive knowledge of the *specific* pothole involved.  It was enough to show that they were aware of the continuous formation of potholes in the parking lot through the winter and spring of 1982.") (emphasis in original).  With this in mind, and with reasonable inferences construed in Reyna's favor, there is adequate evidence indicating that Lowe's had such knowledge.

**MEMORANDUM DECISION AND ORDER - 5**

According to Lowe's, "asphalt expands and contracts as air temperatures rise and fall, *guaranteeing* that paved areas routinely develop small cosmetic fissures . . . ."  Mem. in Supp. of MSJ, p. 13 (Docket No. 52, Att. 2) (emphasis added).  Although Lowe's then argues that "it would be inordinately expensive to repair" such minor imperfections (*see id*), it is nonetheless reasonable to infer from this that (1) the parking lot at Lowe's contains similar structural irregularities, and (2) Lowe's was aware of this physical phenomenon taking place at its parking lot.  *See Shea*, 328 P.3d at 531 ("It was enough for her to show at this stage in the proceedings that Kevic had knowledge of the 'continuous formation' of ice buildup at the car wash exit at certain times during the winter months.") (quoting *All*, 708 P.2d at 887).  Perhaps the record could be developed more fully as to the at-issue parking lot's actual condition, in addition to the protocol at Lowe's for maintaining its parking lot due to what it admits is an inevitable and continuous deterioration over time,[3] but this evidence – as "skinny" as it is – is still enough to create an issue of fact concerning Lowe's duty in a premises liability setting, particularly when that evidence is considered in Reyna's favor.  The exact contours of any such duty, and whether that duty was breached, is for the fact-finder to determine.  Until then, Lowe's Motion for Summary Judgment is denied in this respect.

> 2.   Questions of Fact Exist as to Whether Plaintiff's Accident Caused Certain (but Not All) of Her Claimed Injuries

It is a general rule in Idaho that a layperson is not permitted to testify regarding the cause of a medical condition *unless* that medical condition is within the comprehension of the ordinary

---

[3]  For example, in *All*, the Idaho Supreme Court reversed the trial court's directed verdict for the defendant store because the evidence viewed in the light most favorable to the plaintiff customer "established that there were potholes in the area of the north entrance, that Shelby's and Smith's were aware of the pothole problem generally, that they were patching them up on a temporary basis, and that they had plans to repave the entire lot."  *All*, 708 P.2d at 887.

**MEMORANDUM DECISION AND ORDER - 6**

lay person.  *See Cook v. Skyline Corp.*, 13 P.3d 857, 866 (Idaho 2000); *see also* Fed. R. Evid.

701 ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to

one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding

the witness's testimony or to determining a fact in issue; and (c) not based on scientific,

technical, or other specialized knowledge within the scope of Rule 702.").  However,

> [w]here the subject matter regarding the cause of disease, injury, or death of a person
> is wholly scientific or so far removed from the usual and ordinary experience of the
> average person that expert knowledge is essential to the formation of an intelligent
> opinion, only an expert can competently give opinion evidence as to the cause of
> death, disease, or physical condition.

*Bennion v. U.S.*, 2006 WL 4524339, *3 (D. Idaho 2006) (citing *Evans v. Twin Falls Cnty.*, 796

P.2d 87,91 (1990) (quoting 31A Am.Jur.2d *Expert Opinion Evidence* § 158)).

Here, even when assuming a duty to warn of/repair the crack in its parking lot, Lowe's

goes on to state that it is "still entitled to summary judgment because Reyna fails to establish a

causative connection between the shopping cart incident and her subsequent protracted and

bizarre medical history and idiopathic medical conditions."  Mem. in Supp. of MSJ, pp. 14-15

(Docket No. 52, Att. 2).  In particular, Lowe's points out "Reyna's numerous prior lawsuits, pre-

existing medical conditions, and diagnosed paranoid delusions with somatic focus (i.e.,

hypochondria)," arguing that Reyna cannot show that her claimed injuries were in fact caused by

the accident in the Lowe's parking lot because she failed to properly disclose "medical causation

experts."  *See id.* at pp. 4-9.  Given Reyna's spotty adherence to the expert disclosure deadlines

(*see infra*), Lowe's arguments in this regard have the Court's attention.

In a March 9, 2015 Order, this Court already limited the manner in which Reyna may use

expert witnesses to help prove her case against Lowe's, stating in relevant part:

> It is obvious that Plaintiff has not provided any expert reports relative to her treating
> physicians.  Still, as Defendant admits, this is not required where those treating

**MEMORANDUM DECISION AND ORDER - 7**

physicians are testifying as fact witnesses. Therefore, so long as the doctors referenced within Plaintiff's Motion to Allow Expert Testimony[4] opine only as to their treatment of Plaintiff, those opinions are proper. In this respect, then, Plaintiff's Motion to Allow Expert Testimony is granted. To be clear: Plaintiff's treating physicians may testify about their treatment and care of Plaintiff at trial, if necessary.

*However*, if Plaintiff's Motion to Allow Expert Testimony requests more (for example, an extension of time either to allow Plaintiff to designate previously-undisclosed treating physicians or to permit the submission of expert reports so as to convert a treating physician from a fact witness to an expert witness), it is denied. District courts have broad discretion in supervising the pretrial phase of litigation. Once a district court has issued a scheduling order, FRCP 16(b)'s good cause standard primarily considers the diligence of the party seeking the amendment. Although the existence of prejudice to the party opposing the modification may supply reasons to deny a motion, the focus on the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end.

Here, there is no good cause to extend the expert disclosure deadline once again (and after-the-fact) to allow for anything other than Plaintiff's already-disclosed treating physicians to testify about their treatment of Plaintiff. Plaintiff's argument that she "was not informed by Pro Bono Counselor Kurt Holzer, during the time of mediation that [she] still needed to comply with the Expert Witness deadline" misses the point. Mr. Holzer was appointed to assist Plaintiff at mediation – nothing more. This is clear not only from the Court's April 11, 2014 and May 5, 2014 Orders . . ., but also from Plaintiff's *own* self-titled Motion for Appointment of a Pro Se Attorney for Mediation Purposes Only . . . . Simply put, Mr. Holzer was not appointed to ensure that Plaintiff's procedural house was in order. Moreover, since Mr. Horras' withdrawal on February 4, 2014, Plaintiff has been aware of the need to meet the Court's deadlines; to be sure, on March 13, 2014, she herself moved to extend the then-existing deadlines, including the expert disclosure deadline. For Plaintiff to now argue that it was somehow Mr. Holzer's fault that she missed the expert disclosure deadline is disingenuous and ignores the responsibilities that attach to a party who decides to pursue an action *pro se*. Therefore, to the extent even necessary, Plaintiff's Motion to Allow Expert Testimony is denied in this alternate respect.

3/9/15 Order, pp. 11-13 (Docket No. 62) (internal footnotes, quotation marks, and citations

omitted; italics in original).

---

[4] The Court's March 9, 2015 Order considered several of Reyna's then-pending motions, including the referenced Motion to Allow Expert Testimony. *See* 3/9/15 Order (Docket No. 62).

**MEMORANDUM DECISION AND ORDER - 8**

It is thus apparent that Reyna has no expert reports from any medical providers who can help substantiate her claim against Lowe's.  But this, by itself, is not fatal to Reyna's case when understanding that "a treating physician may [still] testify as to opinions formed during the course of treatment – as a fact witness – without providing an expert report . . . ."  *Id.* at p. 10 (recognizing that treating physician cannot testify as to opinions formed beyond course of treatment – as expert witness – unless those opinions are accompanied by written report pursuant to FRCP 26(a)(2)(b)) (citing and quoting *Robertson v. Sadjak*, 2010 WL 1418393, *5 (D. Idaho 2010) ("Consistent with the Advisory Committee Notes, under Rule 26(b)(4), treating physicians should be permitted to testify to their observations regarding diagnosis, treatment, and prognosis without providing an expert report.")).  Important here, however, such witnesses "still must be disclosed[5] pursuant to FRCP 26(a)(2)([C])."  *Id.* at p. 11, n.5.  Indeed, the Advisory Committee Notes to FRCP 26's 2010 Amendments describes in detail the requirement of such disclosure:

> A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703, or 705.  *Frequent examples include physicians or other health care professionals* and employees of a party who do not regularly provide expert testimony.  *Parties must identify such witnesses under Rule 26(a)(2)(A) and provide the disclosure required under Rule 26(a)(2)(C).*

Fed. R. Civ. P. 26 advisory comm. notes to 2010 amendments (emphasis added).  Unaddressed by the March 9, 2015 Order was whether, in fact, Reyna ever disclosed any experts pursuant to FRCP 26(a)(2)(C).  *See* 3/9/15 Order, p. 11, n.5 (Docket No. 62).  It has since come to the Court's attention that this is not the case.

---

[5]  FRCP 26(a)(2)(C) identifies the contents of any such disclosure as (1) "the subject matter on which the witness is expected to present evidence under Federal rule of Evidence 702, 703, or 705;" and (2) "a summary of the facts and opinions to which the witness is expected to testify."  Fed. R. Civ. P. 26(a)(2)(C).

**MEMORANDUM DECISION AND ORDER - 9**

Following oral argument on Lowe's Motion for Summary Judgment, the undersigned attempted to settle the pond on the status of Reyna's expert disclosures, via an Order, stating:

> On April 20, 2015, this Court heard Defendant's Motion for Summary Judgment (Docket No. 52). During the hearing, the issue of Plaintiff's disclosure/nondisclosure of her treating physician(s) (testifying in either their expert capacity or on factual matters) became an issue relevant to that Motion. Therefore, to ensure a complete record on the subject (one that is not available simply by looking at the docket or based upon the briefing supplied thus far), **on or before April 30, 2015**, the parties are to provide the Court with the state of such disclosures – specifically, (1) whether *any* treating physicians have been formally disclosed , and, if so, (2) the manner of such disclosures, and (3) the date of such disclosures. Consistent with the Court's March 9, 2015 Memorandum Decision and Order (Docket No. 62), this will not serve as an opportunity to disclose previously-undisclosed witnesses.

4/20/15 Order (Docket No. 65) (emphasis in original). Both Reyna and Lowe's submitted the requested information to the Court. *See* Reyna Decl. (Docket No. 67); Def.'s Resp. Re Ct.'s Order (Docket No. 68). From these submissions, it is clear that, while, Reyna identified many individuals (including medical providers) in her Initial Disclosures pursuant to FRCP 26(a)(1), she made no expert disclosures pursuant to FRCP 26(a)(2) and this Court's related Case Management Orders (Docket Nos. 10, 16 & 23). This is not enough. *See, e.g.*, *Langermann v. Property & Ca. Ins. Co. of Hartford*, 2015 WL 4724512, *4 (D. Nev. 2015) ("These [Initial] [D]isclosures are insufficient to comply with Plaintiff's obligations under rule 26(a)(2)(C). The disclosure contains no information about the facts and opinions on which each provider is expected to testify as required by Rule 26(a)(2)(C)(ii). The disclosure contains only the most generic, unhelpful description of the subject matter on which each provider is expected to present evidence under Rules 702, 703, or 705 [of the] Federal Rules of Evidence as required by Rule 26(a)(2)(C)(i) . . . . Providing voluminous treating provider medical records is simply insufficient to enable Hartford to determine what opinions the treating physicians will offer.");

**MEMORANDUM DECISION AND ORDER - 10**

*see also Harvey v. District of Columbia*, 2015 WL 4909938, *12 (C.A.D.C. 2015) ("Before the 2010 Amendments to the Rules, Rule 26(a)(2) allowed a party to name a treating physician as the party would name any other witness, that is the party did not need to provide the opposing side with the subject matter of the testimony and a summary of the facts and opinions to which the treating physician was expected to testify.  After the amendments, however, the Rule requires such disclosures.") (internal citations omitted).  Additionally, Reyna has not attempted to show that her failure to comply with the FRCP 26(a)(2)(C) disclosure requirements is substantially justified or harmless.[6]  *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless).

What remains, then, is a hodgepodge of medical and other providers who have treated Reyna at some point over time for a myriad of ailments with multiple potential etiologies – some of which may have no application whatsoever to this case.  The purpose of expert witness disclosures is to prevent unfair surprise; without such disclosures here, there is no way Lowe's (or the Court or the factfinder) can fully understand (or, as to Lowe's, defend against) the scope of Plaintiff's claimed injuries and the correlation, if any, to Reyna's accident in the Lowe's

---

[6]  In her response to the Court's April 20, 2015 Order, Reyna states that "[t]he attached list of physician's was not submitted to the court by the Expert Witness Deadline, due to the fact that treatment and identification was/is still ongoing.  Plaintiff was unable to submit to the court accurate information that was still not made a available to Reyna by the treating physicians on the disclosure list."  Reyna Decl., ¶ 4 (Docket No. 67).  This explanation ignores FRCP 26(e)'s contemplation of incomplete disclosures, requiring that Rule 26(a) disclosures be supplemented over time.  In other words, this explanation provides no justification for any delay in Reyna's disclosures or indication of harmlessness as to Lowe's.

**MEMORANDUM DECISION AND ORDER - 11**

parking lot.  As a result, Reyna's experts, including treating physicians, cannot properly testify at trial and are precluded from doing so.  In this respect only, Lowe's Motion for Summary Judgment is granted.

Nonetheless, the fact that Reyna is precluded by her actions from calling expert witnesses to testify at trial is not dispositive of her *entire* action (which is the result Lowe's Motion for Summary judgment actually attempts to accomplish (*see supra*)).  To be sure, it affects her ability – insofar as expert testimony is essential – to connect the dots of causation between accident and injury.  Yet, as stated above, expert testimony is not necessary in each and every instance.  *See supra*.  On this point, the Idaho Court of Appeals, in *Dodge-Farrar v. American Cleaning Servs. Co., Inc.* 54 P.3d 954 (Idaho Ct. App. 2002), highlights the interplay between lay and expert testimony vis à vis causation, commenting:

> Idaho Rule of Evidence 701 permits lay witnesses to testify in the form of an opinion or inference only if the opinion or inference is rationally based on the perception of the witness, and the testimony is helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.  Although the admission of layperson opinion testimony is usually within the discretion of the district court, the general rule in Idaho is that a layperson is not permitted to testify regarding the cause of a medical condition.  This limitation applies, however, only where the subject matter regarding the cause of disease, injury or death of a person is wholly scientific or so far removed from the usual and ordinary experience of the average person that expert knowledge is essential to the formation of an intelligent opinion.  *When alleged injuries are of a common nature and arise from a readily identifiable cause, there is no need for the injured party to produce expert testimony.  Requiring expert testimony in all such cases would needlessly increase the cost of litigation, discourage injured persons from bringing small but legitimate claims, and also burden defendants who might feel compelled to hire their own experts in response.*
>
> ....
>
> *[W]e conclude that a layperson may testify to the causation of medical symptoms of injuries where such causation is within the usual and ordinary experience of the average person, and also satisfies I.R.E. 701.*  For example, if a person fell down some steps, landing on a knee, and immediately thereafter felt pain in the knee, saw

**MEMORANDUM DECISION AND ORDER - 12**

an open wound on the knee, and within minutes or hours observed that the knee was swelling, that lay person could provide reliable testimony that the pain, wound and swelling were caused by the fall.  A layperson could also testify that medical care obtained to treat those immediate symptoms was causally related to the fall.  As the claimed symptoms and treatment become more separated in time from the fall, however, the causal relationship becomes more doubtful and tenuous, and expert testimony becomes necessary to establish causation.  As time passes, the possibility that prior or subsequent injuries or unrelated disease processes may play a causal role makes lay opinion unreliable and inadequate to sustain a claim.  *Accordingly, lay testimony on causation must be limited to the symptoms which are proximate enough to the injury that lay opinion can be deemed competent and reliable.  Just where within the time continuum the line must be drawn to exclude lay testimony is necessarily a decision committed to the trial court's discretion based upon the facts and circumstances of the particular case.  In addition, even as to symptoms that appear immediately after the traumatic event, lay opinions may be foreclosed if the causation question is not a matter within the common knowledge and experience of the average person.*  Thus, in the foregoing hypothetical, a layperson might be precluded from testifying that a skin rash which appeared on her arms immediately after the fall was causally related to the fall.

*Id*. at 957-59 (internal citations omitted, emphasis added).  Ultimately, the Court of Appeals in *Dodge-Farr* held that the trial court abused its discretion by excluding the lay plaintiff's testimony that a fall caused immediate pain, swelling, and difficulty walking, but that the trial court properly excluded the plaintiff's testimony that the same fall caused a permanent ankle deformity.  *See id*. at 959.

The rationale of *Dodge-Farr* applies here, in that Reyna herself (and perhaps others) is able to opine that her accident in the Lowe's parking lot contributed to certain of (but definitely not all) her injuries.[7]  Such a straightforward claim makes logical sense to the lay person, without

---

[7]  The particulars to which Reyna can or cannot testify at trial is not the subject of this Decision – rather, only the fact that it is possible for Reyna to establish (or, more appropriately, create an issue of fact as to) the causation element of her premises liability claim against Lowe's is ruled upon here.  Moreover, even if it were necessary to now set in stone the boundaries of Reyna's testimony, the Court cannot do so upon the scattershot record now before it.  The more appropriate time to do so is after the parties have filed their motions in limine before trial.  In the coming days, the Court will be setting a trial setting conference and entering an order setting trial, which will include deadlines for motions in limine.

**MEMORANDUM DECISION AND ORDER - 13**

the need for expert testimony.  This reality presents an issue of fact, thus precluding the entry of summary judgment in Lowe's favor.

## III.  ORDER

Based on the foregoing, it is HEREBY ORDERED that Lowe's Motion for Summary Judgment (Docket No. 52) be GRANTED, in part, and DENIED, in part, as follows:

1.    Questions of fact exist as to whether Lowe's knew, or should have known, of its parking lot's allegedly dangerous condition.  In this respect, the Motion is DENIED;

2.    Reyna's experts, including treating physicians, are precluded from testifying at trial.  In this respect, the Motion is GRANTED; and

3.    Reyna herself is able to opine that her accident contributed to certain of her injuries.  In this respect, the Motion is DENIED.

DATED:  **September 1, 2015**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 14**